UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT MOORE,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>JOE LANKFORD, MERCEDES ARELLANO, R. BUCKEL, AND DAVID STROMSKI,<br><br>　　　　　　　　　　　Defendants. | Case No.: 19CV2406-DMS (BLM)<br><br>**ORDER DENYING IN PART PLAINTIFF'S MOTION FOR ORDER COMPELLING DISCOVERY**<br><br>**[ECF No. 27]** |

Currently before the Court is Plaintiff's September 4, 2020 Motion for Order Compelling Discovery [ECF No. 27 ("MTC")], Defendants' September 22, 2020 Opposition to the motion [ECF No. 30 ("Oppo.")], and Plaintiff's September 29, 2020 reply [ECF No. 31 ("Reply")]. For the reasons set forth below, Plaintiff's motion is **DENIED IN PART**.

**DISCOVERY BACKGROUND**

On July 10, 2020, Plaintiff served written discovery on Defendants that included Requests for Production of Documents ("RFPs") and Interrogatories. MTC at 18-48 and 49-51 ("Plaintiff's Decl.") at ¶ 2; see also Oppo. at 6; ECF No. 30-1, Declaration of Christopher H. Findley In Support of Defendants' Opposition to Plaintiff's Motion to Compel ("Findley Decl.") at ¶ 2. Defendants responded to the requests on August 10, 2020 and produced more than 3,500

1

documents on a compact disc.  Plaintiff's Decl. at ¶ 3; <u>see also</u> Oppo. at 6; Findley Decl. at ¶ 2, Exhs. 1-4.

On August 16, 2020, Plaintiff submitted a motion to compel that was received on August 21, 2020 and accepted on discrepancy on September 4, 2020.  ECF Nos. 25 and 27.  On September 8, 2020, the Court issued a briefing schedule requiring Defendants to file their opposition on or before September 22, 2020 and Plaintiff to file any reply on or before October 13, 2020.  ECF No. 28.  The parties timely filed their pleadings in accordance with the Court's order.  <u>See</u> Oppo. and Reply.

On September 18, 2020, after the instant motion was filed, Defendants printed the documents previously submitted to Plaintiff on a compact disc and delivered paper copies to Plaintiff.  Findley Decl. at ¶ 2.

## **LEGAL STANDARD**

The scope of discovery under the Federal Rules of Civil Procedure is defined as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 26(b)(1).

District courts have broad discretion to determine relevancy for discovery purposes.  <u>See</u> <u>Hallett v. Morgan</u>, 296 F.3d 732, 751 (9th Cir. 2002).  District courts also have broad discretion to limit discovery to prevent its abuse.  <u>See</u> Fed. R. Civ. P.26(b)(2) (instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more convenient, less burdensome, or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)").

A party may request the production of any document within the scope of Rule 26(b). Fed. R. Civ. P.34(a). "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Id. at 34(b)(2)(B). The responding party is responsible for all items in "the responding party's possession, custody, or control." Id. at 34(a)(1). Actual possession, custody or control is not required. Rather, "[a] party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document." Soto v. City of Concord, 162 F.R.D. 603, 619 (N.D. Cal. 1995).

A party may serve interrogatories that relate to any matter within the scope of Fed. R. Civ. P. 26(b). Fed. R. Civ. P. 33(a). "The grounds for objecting to an interrogatory must be stated with specificity," and any interrogatory not objected to must be answered fully in writing under oath. Fed. R. Civ. P. 33(b). An interrogatory not objected to within 30 days after the responding party has been served is waived, unless the court, for good cause, excuses the waiver. Fed. R. Civ. P. 33(b)(4). The waiver is effective "even in situations where a party had a proper objection to a discovery request." Reliance Ins. Co. v. Core Carriers, Inc., 2008 WL 2414041 *3 (M.D. Fla. June 11, 2008).

## DISCUSSION

Defendants argue that the Court should deny Plaintiff's motion because he failed to meet and confer prior to filing the motion and did not include a certificate demonstrating a good faith attempt to meet and confer with his motion. Oppo. at 6, 8-9.

While Defendants are correct, and the Court may deny a motion to compel solely due to Plaintiff's failure to meet and confer prior to filing, "courts can still decide a motion on the merits despite a failure to meet and confer." Rogers v. Giurbino, 288 F.R.D. 469, 477 (S.D. Cal. 2012) (citing Marine Group, LLC v. Marine Trvelift, Inc., 2012 WL 1155971, at *2–3, (S.D. Cal. Apr. 6, 2012) (explaining failure to meet and confer is grounds for denying a motion, but still addressing the merits)). Here, Plaintiff did not comply with the meet and confer requirements prior to filing the instant motion but the Court declines to deny Plaintiff's motion on this ground. Id. (finding

that *pro se* inmate's failure to meet and confer prior to filing a motion to compel did "not warrant an outright denial of his Motion to Compel" and waiving the meet and confer requirement) (citing S.D. Cal. CivLR. 1.1(d) ("[i]n any case for the convenience of the parties in interest, or in the interest of justice, a judge may waive the applicability of these rules.")).

A. Compact Disc Production

Plaintiff seeks an order from the Court requiring Defendants to "transcribe and produce for inspection every document listed in the Plaintiff's request for production of documents" and to provide Plaintiff with paper copies of the documents instead of a compact disc. MTC at 1-2. Because Plaintiff did not meet and confer with defense counsel, Defendants were unable to resolve this issue without litigation. In their opposition, Defendants explain that they produced their documents on a compact disc due to the volume of the documents (over 3,500 documents) and on the assumption that Plaintiff would be able to view the documents via the prison's litigation coordinator. Oppo. at 6-7. After receiving Plaintiff's motion, Defendants "produced the documents to Plaintiff in paper format." Id. at 7; see also Findley Decl. at ¶ 2 ("[a]fter receiving this Motion, I caused the documents to be printed, placed in a box, and delivered to Plaintiff on September 18, 2020"). Plaintiff confirmed that he received the paper documents. Reply at 2. Accordingly, the Court **DENIES AS MOOT** Plaintiff's request for an order requiring Defendants to produce paper copies.

B. Interrogatories No. 6 to Defendant Lankford, No. 13 to Defendant Strumsky, No. 15 to Defendant Buckel, and No. 6 to Defendant Arellano

Plaintiff seeks an order from the Court compelling further response to Interrogatory No. 6 to Defendant Lankford, Interrogatory No. 13 to Defendant Strumsky, Interrogatory No. 15 to Defendant Buckel, and Interrogatory No. 6 to Defendant Arellano. MTC; see also Reply.[1] The

---

[1] Plaintiff seeks further responses to Interrogatory No. 6 to Defendant Arellano and Interrogatory No. 15 to Defendant Buckel on page five of his Reply. It is unclear if Plaintiff intended to also seek further responses to Interrogatory No. 6 to Defendant Lankford and Interrogatory No. 13 to Defendant Strumsky since Plaintiff does not specifically request further response to those interrogatories. The Court will give Plaintiff the benefit of the doubt and include them in its analysis since the interrogatories concern the exact same type of information being sought in

interrogatories ask "[h]ave you ever been disciplined if so for what [?]" and "[h]ave you ever received any write-ups or discipline from any superior supervisors ever, if so what were they for[?]"  MTC at 30 (Interrogatory No. 6 to Defendant Lankford), 35 (Interrogatory No. 6 to Defendant Arellano), 46 (Interrogatory No. 13 to Defendant Strumsky) and 41 (Interrogatory No. 15 to Defendant Buckle).

> Defendants responded to the interrogatories and stated:
>
> Defendant objects on the ground that the interrogatory is compound.[2]  Defendant further objects on the grounds that it is not relevant to a claim or defense considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and that the burden or expense of the discovery outweighs its benefits.  Fed. R. Civ. P. 26(b)(1).  The request would also violate the privacy rights of the third-party inmates.  The request would also violate the privacy rights of the Defendant.  Finally, the request would violate the official information privilege.  Subject to these objections, Defendant responds as follows: No.

Findley Decl. at Exhs. 1-4 (citations omitted).  Defendants also sent Plaintiff a declaration signed under penalty of perjury from J. Giurbino, a Correctional Counselor currently assigned as the Acting Litigation Coordinator at Richard J. Donovan Correctional Facility ("RJDCF").  Giurbino Decl. at ¶ 1.  Giurbino declares that there are no documents responsive to the four interrogatories at issue.  Id. at ¶ 3 (no responsive documents to Interrogatory No. 6 to Defendant Lankford, No. 13 to Defendant Strumsky, No. 15 to Defendant Buckel, or No. 6 to Defendant Arellano).

All four defendants responded "No" to the interrogatory and Giurbino's declaration confirms that there are no responsive documents.  Accordingly, Plaintiff's request to compel

---

Interrogatory No. 6 to Defendant Arellano and Interrogatory No. 15 to Defendant Buckel.

[2] This first sentence is not included in Defendants' response to Interrogatory No. 6 to Defendant Lankford, but is included in the responses to the other three interrogatories.  Findley Decl. at Exh. 3.

further response Interrogatory No. 6 to Defendant Lankford, Interrogatory No. 13 to Defendant Strumsky, Interrogatory No. 15 to Defendant Buckel, and Interrogatory No. 6 to Defendant Arellano is **DENIED**.

    C.    <u>Interrogatories No. 16 to Defendant Lankford, No. 15 to Defendant Arellano, No. 16 to Defendant Buckle, and No. 14 to Defendant Strumsky</u>

Plaintiff seeks an order from the Court compelling further response to Interrogatory No. 16 to Defendant Lankford[3], Interrogatory No. 15 to Defendant Arellano, Interrogatory No. 16 to Defendant Buckle, and Interrogatory No. 14 to Defendant Strumsky.  MTC at 2; <u>see also</u> Reply at 5.  Those interrogatories ask

> Have you ever been written up or grievances filed against you by any inmate while you worked in the canteen, if so how many and for what.
>
> Have you ever had a grievance filed against you by any inmate besides the plaintiff, if so for what.
>
> Have you ever had a 602 grievance filed against you by any other inmate other than the plaintiff, for what.
>
> Have you ever been written up by inmates if so for what.

<u>Id.</u> at 31 (Interrogatory No. 16 to Defendant Lankford), 36 (Interrogatory No. 15 to Defendant Arellano), 41 (Interrogatory No. 16 to Defendant Buckle), and 46 (Interrogatory No. 14 to Defendant Strumsky).

Defendants responded to the interrogatories and stated:

> Defendant objects on the ground that the interrogatory is compound.  Defendant further objects on the grounds that it is not relevant to a claim or defense

---

[3] Plaintiff's MTC states that he is seeking further response to Interrogatory No. 16 to Defendant Lankford. MTC at 2. Plaintiff's Reply states that he is seeking further response to Interrogatory No. 14 to Defendant Lankford. Replay at 5.  The Court assumes that this is a typographical error and Plaintiff intended to write Interrogatory No. 16 which, similar to the other interrogatories at issue, concerns potential grievances filed against Defendant Lankford by inmates.  <u>Id.</u>  Interrogatory No. 14 asks Defendant Lankford "On 1-12-19 when you had a disagreement and the Plaintiff reported to work the next day didn't you tell the Plaintiff that he couldn't work in the front of the canteen, but that he had to work in the back of the canteen" and does not appear to be at issue in this motion.  Findley Decl. at Exh. 3.

>considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and that the burden or expense of the discovery outweighs its benefits. Fed. R. Civ. P. 26(b)(1). The request would also violate the privacy rights of the third-party inmates. The request would also violate the privacy rights of the Defendant and third-party inmates. Finally, the request would violate the official information privilege.

Findley Decl. at Exhs. 1-4 (internal citations omitted).

Plaintiff seeks an order from the Court requiring Defendants to answer the interrogatories and produce responsive documents. MTC at 2. Plaintiff argues that the interrogatories do not seek privileged information and specifically notes that he is not asking for information "such as addresses, medical data, leaves or vacations etc." Id. Plaintiff argues that the information is relevant to his case because it demonstrates a pattern and history of racist, discriminatory, and retaliatory behavior. Id.

Defendants contend that the inmate grievances Plaintiff seeks (1) are not relevant or within the scope of discovery, (2) violate the privacy rights of Defendants and third-party inmates, and (3) are protected by the official information privilege. Oppo. at 9-15.

### 1. Relevance

Defendants argue that the grievances are not relevant or within the scope of discovery because they could not lead to discoverable evidence since they only show that "Defendants acted consistently with the allegations Plaintiff is making in this case" and prior bad acts are inadmissible. Id. at 10. Defendants note that grievances are merely allegations and do not mean that the person named in the grievance has committed whatever act they are accused of committing making the grievances undiscoverable. Id.

The Court overrules Defendants' objection to the extent that they argue that grievances are never relevant and never within the scope of discoverable information. See Tate v. Andres, 2020 WL 1984151, at *3 (E.D. Cal., Apr. 27, 2020) (granting plaintiff's motion to compel further response to RFPs, finding that "complaints or appeals against defendant based upon the same type of conduct at issue in this action are, in fact, relevant[,]" and noting that "sufficient

similarities in complaints could potentially demonstrate a pattern of conduct by defendant that would speak to his intent, which is a necessary component to each of the claims against him"); Houston v. Eldridge, 2018 WL 1014459, at *5 (E.D. Cal., Feb. 22, 2018) ("Plaintiff is entitled to discovery of grievances filed by other inmates alleging that defendants [] used physical violence on an inmate."); Eusse v. Vitela, 2015 WL 9008634, at *4 (S.D. Cal. Dec. 14, 2015) ("other disciplinary records and substantiated complaints about conduct similar to that alleged in the complaint are relevant and may lead to the discovery of admissible evidence that could bear on Plaintiff's claims") citing Garcia v. Cluck, 2013 WL 6441474, *3 (S.D. Cal. Dec. 6, 2013) (finding that complaints by inmates about conduct similar to the plaintiff's allegations of retaliation are relevant, and directing production of same). Plaintiff's requests seek relevant information but because they are not limited to an appropriate time period and to the specific claims at issue in this case, they also seek irrelevant information. See Houston v. Eldridge, 2018 WL 1014459, at *5 ("Plaintiff is not entitled to grievances filed against defendant Eldridge alleging physical violence because plaintiff does not allege that defendant Eldridge used excessive force"); Taylor v. O'Hanneson, 2014 WL 2696585 at *5 (E.D. Cal. 2014) (denying without prejudice plaintiff's overbroad request for grievances against defendants concerning the mistreatment of prisoners but suggesting that a "properly phrased request. . . . specifically tailored to documents pertaining to Plaintiff's claim of excessive force" would be permitted and noting that "admissibility of character evidence is a proper objection to be raised at trial, but not necessarily in the discovery phase.").

Plaintiff's complaint alleges cruel and unusual punishment, deliberate indifference to safety, ADA discrimination, equal protection violations, and retaliation. ECF No. 1 ("Compl."). The alleged wrongful conduct occurred during 2019 and Plaintiff filed his complaint in this court on December 16, 2019. Id. Accordingly, the Court finds the relevant time frame to be January 1, 2015 to December 31, 2019. The Court further finds that with regard to the identified interrogatories and the requested grievances, the scope of relevant response for each Defendant is all grievances filed between January 1, 2015 and December 31, 2019 that allege claims similar to the claims alleged against each Defendant in the complaint.

2.      Privacy Rights

Defendants contend that Plaintiff's requests violate the privacy rights of Defendants and third-party inmates because "Defendants have a privacy interest in not disclosing allegations, investigations, or grievances claiming they acted inappropriately" and grievances may contain confidential information such as the names and addresses of staff members and other identifying information. Id. at 12. In addition, grievances may contain statements from witnesses who have been promised confidentiality and producing that information may lead to lower witness participation in future investigations. Id. Defendants request that they be able to redact inmate names if the Court orders the production of the inmate grievances. Id. at 13.

Defendants' privacy objection is overruled. If documents are ordered to be produced, Defendants' privacy concerns can be addressed with a protective order and/or the redaction of identifying information. See Lamon v. Adams, 2010 WL 4513405, at *3–4 (E.D. Cal. Nov.2, 2010) (ordering redaction of the names of the inmates who filed grievances against correctional officer before documents were provided to plaintiff); see also Smith v. Kiesz, 2013 WL 1338927, at *2 (E.D. Cal., Apr. 3, 2013) (ordering defendant to produce documents from defendant's personnel file and noting that any documents disclosed were subject to a protective order that required defense counsel "to redact any and all identifying personal information which might pose a security risk if released, including, but not limited to, the defendant's home addresses, social security numbers, telephone numbers, etc."); Eusse, 2015 WL 9008634 at *4 (noting defendants' privacy concerns and ordering that "the names and identifying information of the individuals who made the complaints, as well as other officers who were not involved in the incident, may be redacted."); and Thompson v. Morales, 2008 WL 413757, at *1 (E.D. Cal., Feb. 13, 2008) ("Privacy concerns, if any, may be addressed by redaction of names, CDC numbers, and other identifying information, should the defendants be required to produce documents responsive to this request.").

3.      Official Information Privilege

Finally, Defendants contend that the requested grievances are protected by the official information privilege "which weighs the potential benefits of disclosure against the

disadvantages of chilling a government agency's ability to do its job." Id. Defendants state that when they responded to Plaintiff's interrogatories, they provided Plaintiff with a declaration from J. Giurbino in support of the contention that the official information privilege applies to the instant dispute. Id. at 14; see also MTC at 13-16 ("Giurbino Decl."). Defendants argue that a protective order would be insufficient to protect the information being sought because Plaintiff is a *pro se* prisoner housed at the same facility where Defendants work. Id. at 15.

### a. Legal Standard

"Federal common law recognizes a qualified privilege for official information." Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir. 1990) (citing Kerr v. United States Dist. Ct. for N.D. Cal., 511 F.2d 192, 198 (9th Cir.1975), aff'd, 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976)). The party asserting the privilege has the initial burden of proving the applicability of the privilege. See Kelly v. City of San Jose, 114 F.R.D. 653, 669–71 (N.D.Cal.1987); see also Hampton v. City of San Diego, 147 F.R.D. 227, 230 (S.D.Cal.1993) ("Through this opinion, this court is hereby joining the Northern District's and Central District's procedures outlined in Kelly v. City of San Jose, 114 F.R.D. 653 (N.D.Cal.1987) and Miller v. Pancucci, 141 F.R.D. 292 (C.D.Cal.1992) for invoking the official information privilege"); Stewart v. City of San Diego, 2010 WL 4909630, at *1 (S.D. Cal. 2010) (applying Kelly). A party seeking to invoke the official information privilege in response to a discovery request must serve a timely discovery response specifically identifying the official information privilege as a basis for its objection. Kelly, 114 F.R.D. at 669. The objection must be accompanied by a declaration or affidavit "from a responsible official within the agency who has personal knowledge of the principal matters to be attested to in the affidavit or declaration." Id. The affidavit or declaration must include:

> (1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality (if the agency has shared some or all of the material with other governmental agencies it must disclose their identity and describe the circumstances surrounding the disclosure, including steps taken to assure preservation of the confidentiality of the material), (2) a statement that the official has personally reviewed the material in question, (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of

the material to plaintiff and/or his lawyer, (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, (5) and a projection of how much harm would be done to the threatened interests if the disclosure were made.

Id. at 670. "If the nondisclosing party does not meet this initial burden of establishing cause to apply the privilege, the court must order disclosure of the documents; if the party meets this initial burden, the court generally conducts an *in camera* review of the material and balance[s] each party's interests." Bryant v. Armstrong, 285 F.R.D. 596, 605 (S.D. Cal. 2012).

The balance test requires that "courts must weigh the potential benefits of disclosure against the potential disadvantages." Sanchez, 936 F.2d at 1033-34. The Kelly court provided a non-exhaustive list of factors (taken from Frankenhauser v. Rizzo, 59 F.R.D. 339 (E.D. Pa. 1973)) that may be considered when engaging in this weighing process: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which government self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case. Kelly, 114 F.R.D. at 663. In making this determination, courts must conduct "a situation specific analysis of the factors made relevant by the request in issue and the objection to it." Id. In civil rights cases against police departments, the balancing test should be "moderately pre-weighted in favor of disclosure." Soto, 162 F.R.D. at 613 (quoting Kelly, 114 F.R.D. at 661).

        b.     Analysis

Defendants have satisfied their initial burden of proving the applicability of the privilege.

J. Giurbino's declaration states that he personally reviewed the documents responsive to Interrogatory No. 16 to Defendant Lankford, No. 14 to Defendant Strumsky, No. 15 to Defendant Arellano, and No. 16 to Defendant Buckel and that the documents contain confidential information including "medical information, information about the inmate's property, the inmate's job, and the people with whom the inmate associates." Id. at ¶ 4.  Giurbino explains that the confidential information about other inmates can be used "to extract favors or otherwise weaponize the information" and that releasing the information "would endanger the safety of persons within the prison and jeopardize the security of the institution if disclosed." Id.  Giurbino further explains that the documents contain confidential information about staff members such as "their full names, addresses, and other identifying information" which, if given to an inmate, could be distributed through the inmate population and create a substantial danger for prison staff, their families, and their property. Id. at ¶ 5.  Giurbino notes that RJDCF has an interest in keeping the information confidential because it encourages inmates to make truthful statements during investigations and encourages investigators to accurately report their findings. Id. at ¶ 6.  An inmate is willing to provide truthful statements if they do not have to fear being identified as a snitch or one who cooperates with authorities which could jeopardize their physical safety. Id. at ¶ 7.  Finally, Giurbino declares that even if Plaintiff was represented by counsel, a protective order would be insufficient for protecting the confidential information as Plaintiff could still "learn of the information inadvertently through [his] lawyer, [his] lawyer's staff, or [his] lawyer's representatives." Id. at ¶ 8.

      Because the Court finds that Defendants have satisfied the threshold requirement for application of the Official Information Privilege with respect to these interrogatories, the Court will perform an *in camera* review of the relevant grievances and conduct a balancing analysis to determine whether the Official Information Privilege applies.

      Defendants must lodge a copy of the grievances responsive to Interrogatory No. 16 to Defendant Lankford, Interrogatory No. 15 to Defendant Arellano, Interrogatory No. 16 to Defendant Buckle, and Interrogatory No. 14 to Defendant Strumsky with the Court for *in camera* review to **efile_major@casd.uscourts.gov** on or before **November 6, 2020**. Defendants

12

19cv2406-DMS (BLM)

are only **required to provide grievances that fit within the Court's definition of relevance as set forth in Section C.1.** The Court will review the documents and issue an order regarding Plaintiff's motion to compel further response to Interrogatory No. 16 to Defendant Lankford, Interrogatory No. 15 to Defendant Arellano, Interrogatory No. 16 to Defendant Buckle, and Interrogatory No. 14 to Defendant Strumsky.

D. <u>Sanctions</u>

Plaintiff requests that the Court sanction Defendants in the amount of $100 "as reasonable expenses in obtaining this order" since Defendants were not substantially justified in hindering Plaintiff's access to the requested documents. MTC at 3-4. Defendants contend that the Court should not award sanctions against Defendants because (1) "Plaintiff violated the local and federal rules, and is prohibited from moving for sanctions[,]" (2) "Defendants acted with substantial justification[,]" and (3) "a pro per party who acts for himself is not entitled to attorney's fees." Oppo. at 15-16.

Pursuant to Federal Rule of Civil Procedure 37, if a motion to compel discovery is denied, the Court

> must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

FRCP 37(a)(5)(B). "Discovery conduct is substantially justified if it is a response to a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action." <u>Izzo v. Wal-Mart Stores, Inc.</u>, 2016 WL 409694, at *7 (D. Nev. Feb. 2, 2016) (citing <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988)).

Here, Plaintiff's motion to compel response to Interrogatory No. 6 to Defendant Lankford, Interrogatory No. 13 to Defendant Strumsky, Interrogatory No. 15 to Defendant Buckel, and Interrogatory No. 6 to Defendant Arellano has been denied and there is a good faith dispute as to Interrogatory No. 16 to Defendant Lankford, Interrogatory No. 15 to Defendant Arellano, Interrogatory No. 16 to Defendant Buckle, and Interrogatory No. 14 to Defendant Strumsky.

Because Plaintiff did not comply with the Court's meet and confer requirements and because his motion to compel was denied in part and disputed in good faith in another part, the Court **DENIES** Plaintiff's request for sanctions.

## CONCLUSION

Plaintiff's request for an order requiring Defendants to produce paper copies is **DENIED AS MOOT**.

Plaintiff's request to compel further response Interrogatory No. 6 to Defendant Lankford, Interrogatory No. 13 to Defendant Strumsky, Interrogatory No. 15 to Defendant Buckel, and Interrogatory No. 6 to Defendant Arellano is **DENIED.**

Defendants must lodge the grievances responsive to Interrogatory No. 16 to Defendant Lankford, Interrogatory No. 15 to Defendant Arellano, Interrogatory No. 16 to Defendant Buckle, and Interrogatory No. 14 to Defendant Strumsky as defined by the Court with Judge Major's Chambers at **efile_major@casd.uscourts.gov** on or before **November 6, 2020**. An order regarding Plaintiff's motion to compel responses to those interrogatories will follow.

Plaintiff's request for sanctions is **DENIED**.

**IT IS SO ORDERED**.

Dated:  10/22/2020

Hon. Barbara L. Major
United States Magistrate Judge